UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Daniel Torrez | Not Present |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS FRANCO ET AL (DKT. 41)

## I. Introduction

On January 5, 2024, Zuffa, LLC ("Plaintiff") filed this action against Claudette Franco, Juan Carlos Franco (collectively, the "Francos"), and Socal Tacos BR, Inc. ("Socal Tacos") (collectively, "Defendants"). Dkt. 8. The Complaint advances three causes of action: (1) unauthorized publication or use of communications, in violation of 47 U.S.C. § 605; (2) unauthorized reception of cable service, in violation 47 U.S.C. § 553;[1] and (3) copyright infringement, in violation 17 U.S.C. § 501. *Id.* The Complaint seeks a declaratory judgment, statutory penalties, attorney's fees and costs, and damages. *Id.* at 14–16.

On February 12, 2024, Defendants were served with the Complaint. Dkts. 29, 31, 32. After Defendants failed timely to answer or otherwise respond, Plaintiff requested that the Clerk of Court enter the default of Defendants. Dkt. 33; Dkt. 34. The Clerk entered the default of the Francos on March 20, 2024 (Dkt. 35) and Socal Tacos on March 22, 2024 (Dkt. 36). On April 17, 2024, Plaintiff filed the present Motion for Default Judgment against Defendant. Dkt. 41 ("Motion").

In accordance with Local Rule 7-15, a determination was made that the Motion could be decided without oral argument, and it was taken under submission. Dkt. 43. For the reasons stated in this Order, the Motion is **GRANTED** with respect to liability, but **DEFERRED** with respect to a determination of the amount of damages and attorney's fees that may be awarded.

## II. Background

### A. The Parties

Plaintiff is a Nevada Limited Liability Company with its principal place of business in Las Vegas, Nevada. Dkt. 8 ¶ 5. It is registered to do business in California and owns the UFC 287 - Pereira vs. Adesanya 2 Broadcast, including all undercard matches and the entire television Broadcast, which occurred on April 8, 2023 (the "Broadcast"). *Id.* ¶¶ 5–6.

---

[1] 47 U.S.C. §§ 605 and 553 are both included within the Federal Communications Act ("FCA").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

It is alleged that the Francos reside in California. *Id.* ¶¶ 7–8. It is alleged that Socal Tacos is a domestic corporation licensed to do business in California and located at 26957 Date St., B-205, Murrieta, CA 92563. *Id.* ¶¶ 13–14. It is alleged that, at all times relevant to the matters discussed in the Complaint, the Francos were the officers, directors, shareholders, and/or principals of, and received financial benefits from the operations of Socal Tacos. *Id.* ¶¶ 9, 11.

  B.  Allegations in the Complaint

It is alleged that Plaintiff owns the copyright, distribution and exhibition rights to the Broadcast. *Id.* ¶¶ 18, 41. It is alleged that the Copyright Office issued a Certificate of Registration for the Broadcast on May 1, 2023 with Copyright Registration Number PA 2-409-946. ¶ 41. It is alleged that the Broadcast originated via encrypted closed circuit television, encrypted satellite, and/or digital streaming technology over the internet. *Id.* ¶ 19. It is alleged that the Broadcast was re-transmitted via Content Distribution Networks such as satellite, cable or digital streaming technology. *Id.* It is alleged that Plaintiff, for a licensing fee, has entered into licensing agreements with numerous businesses in California to allow them to exhibit the Broadcast to patrons. *Id.* ¶ 20. It is alleged that Plaintiff has also made the Broadcast available for non-commercial, private viewing by allowing individuals to purchase a non-commercial license to view the Broadcast for a discounted rate. *Id.* ¶ 21. It is alleged that an individual purchasing the Broadcast through a website intended for non-commercial viewing would be provided with terms of service which specifically provide for non-commercial, personal use only. *Id.* ¶ 22.

It is alleged that without obtaining the proper authority or license from Plaintiff, Defendants exhibited the Broadcast at Socal Tacos. *Id.* ¶¶ 23–24, 34, 43. It is alleged that, without discovery, Plaintiff is unable to determine the precise manner in which Defendants obtained the Broadcast, the logical inference is that Defendants accessed the Broadcast without Plaintiff's authorization through one or more of the following methods:

> (1) splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent residence into a business establishment, decrypting unscrambling and receiving the closed circuit, "IPTV", cable or satellite Broadcast; (2) commercially misusing the residential cable, satellite or IPTV internet radio signals by registering as a residence when it is, in fact, a business; or (3) taking a lawfully obtained cable, IPTV or other streaming or satellite reception and decryption device or acquiring international Free-To-Air (FTA) broadcast signals emanating from outside the United States, into a business[;] (4) misusing a residential digital stream acquired or intercepted from an over-the-top "OTT" technologies, used for the delivery of film and TV content via the internet[;] (5) Live or near-live Social Media Streaming or (6) Live Streaming Apps.

*Id.* ¶ 26.

It is alleged that Defendants advertised the exhibition of the Broadcast on social media. *Id.* ¶ 15. The Complaint includes an exhibit with the following image in support of this allegation:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
|---|---|---|---|
| Title | Zuffa, LLC v. Claudette Franco et al | | |



Dkt. 8-1.

    C.    Remedies Sought

Plaintiff seeks a judgment declaring that Defendants' alleged unauthorized exhibition of the Broadcast violated the FCA and that they did so willfully. Dkt. 8 at 14. For the alleged violation of 47 U.S.C. § 605, Plaintiff seeks statutory damages as to each defendant in an amount up to the statutory maximum of $10,000, and enhanced damages for a willful violation in amount up to the statutory maximum of $100,000. *Id.* at 14–15. For the alleged violation of 47 U.S.C. § 553, Plaintiff seeks statutory damages as to each Defendant in an amount up to the statutory maximum of $10,000, and enhanced damages for a willful violation in amount up to the statutory maximum of $50,000. *Id.* at 15. For the alleged violation of 17 U.S.C. § 501, Plaintiff seeks actual damages in an amount of "the actual costs Plaintiff incurred." *Id.* Plaintiff also seeks an award of attorney's fees and costs payable by each Defendant pursuant to 47 U.S.C. §§ 605(e)(3)(B)(iii) and 553(c)(2)(C) and 17 U.S.C. § 505. *Id.* at 15–16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

**III.   Analysis**

    A.    Legal Standards

        1.    Procedural Requirements for Default Judgment

Local Rule 55-1 requires that a party moving for default judgment submit a declaration or include information with respect to each of the following: (1) when and against which party default has been entered; (2) the identification of the pleading to which default has been entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) the Servicemembers Civil Relief Act, 50 U.S.C.A. § 3931 does not apply; and (5) notice has been provided to the defaulting party, if required by Fed. R. Civ. P. 55(b)(2).

        2.    Substantive Standards for Entry of Default Judgment

Fed. R. Civ. P. 55(b) grants discretion to the trial court with respect to whether a default judgment should be entered. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default does not per se warrant or require the entry of a default judgment. *Id*. at 1092–93. The Ninth Circuit has established seven factors that may be applied in determining whether a default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Id*. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citations omitted).

    B.    Application

        1.    Procedural Requirements

Plaintiff has satisfied the procedural requirements of Local Rule 55-1. The default of each of the Francos was entered on March 20, 2024 (Dkt. 35) and the default of Socal Tacos was entered on March 22, 2024 (Dkt. 36). Plaintiff's counsel, Alexander Mardirossian, submitted a declaration in which he attests that Defendants are not infants or incompetents and that the Servicemembers' Civil Relief Act does not apply. Dkt. 41-5 ¶ 14. Fed. R. Civ. P. 55(b)(2) does not require written notice of the application for default judgment because no defendant has appeared personally or by representative. Nevertheless, Plaintiff did serve Defendants with notice of the Motion on March 19, 2024. Dkt. 41-4.

        2.    *Eitel* Factors

            a)    The Possibility of Prejudice

A plaintiff is prejudiced if, absent the entry of a judgment, that party would be left without a remedy. *See Philip Morris USA, Inc., v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery."); *PepsiCo v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

Defendants failed to participate in the litigation after being served. Dkts. 29, 31, 32. Plaintiff will be prejudiced absent entry of a default judgment because it would suffer financial losses if there were no judicial resolution of the claims presented. Accordingly, the first *Eitel* factor weighs in favor of granting the motion.

      b)  The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint

The second and third *Eitel* factors overlap because a plaintiff must properly state a claim and the allegations in the complaint are deemed true. Thus, if the operative complaint is sufficient, a plaintiff's substantive claim has merit for purposes of a request for the entry of a default judgment. *PepsiCo*, 238 F. Supp. 2d at 1175; see also *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (allegations in the complaint must state a claim upon which the plaintiff may recover).

As noted, the Complaint advances three causes of action. *See* Dkt. 8. The causes of action under 47 U.S.C. §§ 605 and 553, which include similar legal standards, are addressed together.

      (1)  <u>First and Second Causes of Action: 47 U.S.C. §§ 605 and 553</u>

The FCA governs "television 'signal piracy,' that is, displaying television programs without the right to do so" under 47 U.S.C. §§ 605 ("Section 605") and 553 ("Section 553"). *G and G Closed Cir. Events, LLC v. Liu*, 45 F.4th 1113, 1114 (9th Cir. 2022). Section 605 applies to pirated programs that are transmitted by radio or satellite, while Section 553 applies to pirated programs that are transmitted by cable. *See id.* at 1115–16.

Liability under Section 605 requires that a defendant "(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a [radio] communication transmitted by the plaintiff." *Cal. Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985) (quoting *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir.1981)). For purposes of Section 605 liability, "radio communications" include satellite television signals. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("When [47 U.S.C. § 605] was written, [] the business of direct-to-home satellite broadcasting did not exist. Still, it is clear from the case law since the 1984 amendments that the 'communications' protected by § 605(a) include satellite television signals."). Liability under 47 U.S.C. § 553, in contrast, requires that a defendant "intercepted or received a 'communications service offered over a *cable system*' without authorization." *Liu*, 45 F.4th at 1115 (quoting 47 U.S.C. § 553(a)(1)) (emphasis added).

The First Cause of Action alleges a violation of Section 605, and the Second Cause of Action alleges a violation of Section 553. Dkt. 8 ¶¶ 17–39. The " 'critical and dispositive legal point' is that in order for there to be a violation [of Section 605 or Section 553], there must be an 'interception.' " *J & J Sports Prods., Inc. v. DeKalb Event Ctr., Inc.*, No. 16-CV-2940, 2018 WL 2057354, at *3 (N.D. Ga. Feb. 15, 2018) (quoting *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753(KBF), 2012 WL 691891, at *2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

(S.D.N.Y. Mar. 2, 2012)). Although the FCA does not set forth a definition of the term "interception," the Supreme Court has held that the "scope of the Communications Act follows from the natural meaning of the term 'intercept,'" indicating the "taking or seizure by the way or before arrival at the destined place." *Goldman v. United States*, 316 U.S. 129, 134 (1942), *overruled on other grounds*, *Katz v. United States*, 389 U.S. 347 (1967).

The Complaint alleges, upon information and belief, that Defendants "order[ed] programming intended for residential use and subsequently displayed it in the commercial establishment [Socal Tacos]." Dkt. 8 ¶ 24. It also alleges that Defendants took a "*lawfully obtained* cable, IPTV or other streaming or satellite reception and decryption device or acquir[ed] international Free-To-Air (FTA) broadcast signals emanating from outside the United States, into a business." *Id.* ¶ 26 (italics added). It is also alleged that it is "logical to conclude that" Defendants "access[ed] the Broadcast . . . without [] authorization" by one of a variety of methods, including, among other options, commercially misusing a residential license or otherwise commercially exhibiting a "lawfully obtained" signal. *Id.* ¶¶ 24–27. It is alleged that "[p]rior to engaging in discovery, Plaintiff is unable to determine the manner in which Defendants obtained the Broadcast." *Id.* ¶ 27.

Neither the commercial misuse of a residential license nor the commercial exhibition of a "lawfully obtained" signal constitutes interception under the FCA. *See Joe Hand Promotions Inc. v. Spain*, No. CV-15-00152, 2016 WL 4158802, at *4 (D. Ariz. Aug. 5, 2016) (47 U.S.C. § 605 inapplicable when defendant lawfully purchased for residential use, and then commercially exhibited a UFC fight broadcast because "there is no evidence of unauthorized signal reception or interception"); *J & J Sports Prods., Inc. v. DeKalb Event Center, Inc.*, No. 16-CV-2940, 2018 WL 2057354, at *3 (N.D. Ga. Feb. 15, 2018) (same); *see also That's Ent., Inc. v. Anciano's Inc.*, No. 94 C 7199, 1996 WL 514989, at *1 (N.D. Ill. Sept. 6, 1996) ("[I]f something makes it all the way to the destined place—be it a ship, a letter, or the transmission of a sporting event—then it has not been intercepted; its very arrival at the destination is proof of that."). However, under Fed. R. Civ. P 8(d)(2), "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). The other forms of access alleged, which include splicing or descrambling a cable or satellite transmission of the Broadcast (Dkt. 8 ¶ 26), constitute interception. *See, e.g.*, *G & G Closed Cir. Events, LLC v. Velasquez*, No. 1:20-cv-01736, 2021 WL 3164096 (E.D. Cal. July 27, 2021), *report and recommendation adopted by G & G Closed Cir. Events, LLC v. Velasquez*, No. 1:20-CV-01736-NONE-SAB, 2021 WL 4846985 (E.D. Cal. Oct. 18, 2021) (granting default judgment for plaintiff when alleged methods of interception included "descrambl[ing]" cable or satellite transmissions and "cable drops or splices."). Thus, this element is sufficiently alleged for the purposes of the Motion.

The second element applies differently to the two statutes. As previously discussed, Section 605 governs *radio* communications, or satellite television signals, and Section 553 governs *cable* communications. *Liu*, 45 F.4th at 1115–16. Throughout the Complaint, various alternative allegations are made about the source of the intercepted communication. The Complaint alleges that the Broadcast "originated via encrypted closed circuit television, encrypted satellite, radio signals and/or digital streaming technology over the internet." Dkt. 8 ¶ 19. It further alleges that the Broadcast was "subsequently re-transmitted via [c]able and/or satellite television or internet protocol streaming technology." *Id.* It also alleges that Defendants "intercept[ed] and exhibit[ed] the encrypted radio signal Broadcast" (*Id.* ¶ 27) and that Defendants "intercepted [the] Broadcast when it was distributed and shown by cable television systems" (*Id.* ¶ 37).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

Some district courts have concluded that Sections 605 and 553 do not apply to internet transmissions. *See, e.g.*, *G & G Closed Cir. Events, LLC v. Espinoza*, No. CV 18-07894 WDK-JC, 2020 WL 7861971, at *4 (C.D. Cal. Oct. 5, 2020) ("[A]lthough the internet has been in wide usage since the mid-1990s, the legislature has not extended the reach of the statutes to include transmissions via the internet and it is not the purview of the district court to insert itself and make this determination."). The Ninth Circuit has not specifically addressed this issue, but has stated that it is a plaintiff's burden to establish how an internet transmission would "come[] within the ambit of §§ 553 or 605." *Liu*, 45 F.4th at 1117. However, for the reasons previously stated as to alternative pleading standards, if any is sufficient, the pleading is adequate. See Fed. R. Civ. P 8(d)(2),

It is alleged that Defendants exhibited an intercepted radio transmission of the Broadcast. This is sufficient to allege a violation of 47 U.S.C. § 605. Dkt. 8 ¶ 27. It is also alleged that Defendants intercepted a cable transmission of the Broadcast, which sufficiently alleges a violation of 47 U.S.C. § 553. *Id.* ¶ 37. Thus, the second element is satisfied for purposes of the Motion.

Liability under Section 605, but not Section 553, also requires that the communication be divulged or published. 47 U.S.C. § 605(a) ("No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . intercepted communication to any person."). The Complaint sufficiently alleges this element by stating that that Defendants "intercept[ed] and exhibit[ed] the encrypted radio signal Broadcast." *Id.* ¶ 27.

For these reasons, violations of both Section 605 and Section 553 are sufficiently alleged. However, the Complaint only alleges one act of interception. As a result, although not expressly alleged in the alternative, the two causes of action are mutually exclusive. "A signal pirate violates § 553 if he intercepts a cable signal, he violates § 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception." *G & G Closed Cir. Events, LLC v. Macias*, No. 20-cv-02916, 2021 WL 2037955, at *3 (N.D. Cal. May 21, 2021) (quoting *J&J Sports Prods., Inc. v. Man Thi Doan*, No. C-08-00324 RMW, 2008 WL 4911223, at *2 (N.D. Cal. Nov. 13, 2008)). Thus, in the section of this Order which evaluates damages, the appropriate statutory provision is addressed. *See G & G Closed Cir. Events, LLC v. Reynoso*, No. CV 18-03763, 2019 WL 13043793, at *3 (C.D. Cal. Oct. 11, 2019) ("Courts have generally held that a Plaintiff may not receive damages under both 47 U.S.C. § 605 and 553, for the same alleged interception or receipt of protected communications.") (internal quotation marks and citation omitted).

    (2) <u>Third Cause of Action: Copyright Infringement Under 17 U.S.C. § 501</u>

Two elements must be satisfied to establish copyright infringement under 17 U.S.C. § 501: "(1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Elements Behav. Health, Inc. v. Marcus*, CV14-08760, 2017 WL 5634854, at *2 (C.D. Cal. Sept. 6, 2017) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). "The Copyright Act confers on owners the exclusive rights to reproduce the work, prepare derivative works, distribute copies to the public, to perform the work publicly, and to display the work publicly. 17 U.S.C. §§ 106(1)-(5)." *Id.* at *7 (quoting *Michaels v. Internet Ent. Grp., Inc.*, 5 F. Supp. 2d 823, 830 (C.D. Cal. 1998)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

The Complaint alleges that Plaintiff is the copyright owner of the exclusive rights of distribution and public performance as to commercial establishments to the Broadcast. Dkt. 8 ¶ 41. The Complaint also alleges that the Copyright Office issued a Certificate of Registration for the Broadcast on May 1, 2023 with Copyright Registration Number PA 2-409-946. *Id.* The Complaint then alleges that, as the copyright owner, Plaintiff has the right of distribution and exhibition licensing to commercial establishments. *Id.* ¶ 42. The Complaint alleges that Defendants unlawfully obtained the Broadcast, enabling them publicly to exhibit the Broadcast without paying the licensing fee. *Id.* ¶ 44.

This sufficiently alleges a violation of 17 U.S.C. § 501.

        c)        The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Default judgment is discouraged when the amount of money at stake in the litigation is "too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007); *see also Eitel*, 782 F.2d at 1472 (A $3 million judgment, considered in light of the parties' dispute as to material facts, supported the decision not to enter default judgment). However, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Bd. of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. 10-2212, 2011 WL 2600898, at *3 (N.D. Cal. June 30, 2011) (the amount of unpaid contributions, liquidated damages, and attorney's fees were appropriate because each was supported by sufficient evidence).

As noted, Plaintiff seeks to recover $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $25,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), $10,000 in statutory damages pursuant to 17 U.S.C. § 504(c)(1), $30,000 in enhanced damages pursuant to 17 U.S.C. § 504(c)(2) and $,2730 in attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) and 17 U.S.C. § 505. Dkt. 41 at 2.

As discussed in more detail below, this request is inconsistent with Plaintiff's allegations of harm. Further, the only damages sought in the Complaint in connection with the alleged copyright violation are "actual damages" under 17. U.S.C. § 504(b). Thus, the damages sought under § 504(c)(1) and § 504(c)(2) are not appropriately sought through the Motion. The remaining damages sought for the FCA violations are statutory, with the amount within the discretion of a court. The issue of attorney's fees is also separately addressed below. Because the amount in damages is not firmly established, the fourth factor is neutral.

        d)        The Possibility of a Dispute Concerning Material Facts

Upon entry of default, all facts pleaded in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quotation marks and citation omitted). Although it is possible that Defendant could dispute some or all of the material facts in the course of litigation, it has not done so thus far, suggesting that it is unlikely to dispute those facts in the future. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan. 23, 2012). Further, "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of dispute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

concerning material facts is remote." *Id.*

Although it is possible that Defendants could dispute some or all of the material facts in the course of litigation, their failure to appear and defend shows that it is reasonable to infer that it is not likely that they could do so. Therefore, the fifth *Eitel* factor weighs in favor of granting the Motion.

e) Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect of the non-moving party. *See Eitel*, 782 F.2d at 1472. Excusable neglect is "an equitable concept that takes account of factors such as prejudice, the length of delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 927 (9th Cir. 2004) (internal quotation marks and citation omitted).

There has been no showing that Defendants' failure to participate in this litigation was the result of excusable neglect. Defendants were properly served the with summons and Complaint, but failed to respond. Dkts. 29, 31, 32. At no time have Defendants appeared. Therefore, this factor weighs in favor of granting the Motion.

f) The Strong Policy Favoring Decisions on the Merits

The final *Eitel* factor considers the strong policy preference of deciding claims on the merits. *See Eitel*, 782 F.2d at 1472. This factor generally disfavors the entry of default judgment. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks and citation omitted). Therefore, the final *Eitel* factor does not preclude the entry of default judgment.

\*          \*          \*

Based on a review and balancing of the *Eitel* factors, the Motion is **GRANTED** as to liability, and **DEFERRED** as to the requested remedies and awards of fees and costs.

C. Remedies Sought

1. General Legal Standards

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Further, the demand for relief must be specific. Fed. R. Civ. P. 8(a)(3). Therefore, "a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip Morris*, 219 F.R.D. at 499. In addition, "Plaintiff must 'prove up' the amount of damages that it is claiming." *Id.* at 501 (citing Fed. R. Civ. P. 8(a)(3)). "In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing." *Id.* at 498 (citing Fed. R. Civ. P. 55(b)(2)). "However, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

default." *Id.*

    2.    <u>Application</u>

        a)    Damages pursuant to the alleged FCA violations

Through the Motion, Plaintiff seeks $10,000 in statutory damages, the statutory maximum, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and $25,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) for the "willful violation" of 47 U.S.C. § 605(a). Dkt 41 at 2.

        (1)    <u>Awarding Damages Under Section 605 or Section 553</u>

As previously discussed, given the nature of the alternative pleading, a single act of interception can support a violation and award of damages, but only either Section 605 or 553, and not both. In similar motions for default judgment in which plaintiffs have alleged violations of both statutes for a single act of interception, district courts in this circuit have assessed the allegations in the complaint and evidence presented with the motion to determine which is better supported.

Where no evidence or allegation is presented of a satellite dish at the subject establishment, most courts have found liability under Section 553 rather than Section 605 "[b]ecause of the prominent placement required for a satellite dish in comparison to a cable box." *Macias*, 2021 WL 2037955, at *4; *see also J & J Sports Prods., Inc. v. Ayala*, No. 5:11–cv–05437, 2012 WL 4097754, at *2 (N.D. Cal. Sept. 17, 2012) ("while [plaintiff's investigator]'s affidavit does *not* state that he observed a cable box . . . since a cable box is hidden more easily than a satellite dish . . . unlike § 605, a permissible inference can be drawn with respect to § 553.") (emphasis in original). Thus, because Plaintiff has provided no evidence to establish the presence of a satellite dish at Socal Tacos, an evaluation of damages under Section 553, rather than Section 605, is appropriate; provided, however, that this may be reevaluated *de novo* based upon a review of any additional evidence submitted by Plaintiff in support of a request for an award of damages.

Plaintiff contends it is "unable to determine the manner in which Defendants obtained the Broadcast" prior to discovery. Dkt. 8 ¶ 27. However, district courts in this circuit have "held in considering [] similar request[s] for default judgment: . . . if plaintiff wanted to prove [the means of transmission], they could have filed a third party subpoena or requested an order for inspection.' The court note[s] that a defendant's default does not eliminate the opportunity to take third party discovery." *J & J Sports Prods. v. Coria*, No. C 12–05779, 2015 WL 1089044, at *4 (N.D. Cal. Feb. 27, 2015) (quoting *J & J Sports Prods., Inc. v. Ro*, No. 09–02860, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010)).

        (2)    <u>Statutory Damages Under Section 553</u>

Plaintiff seeks an award of $10,000 in statutory damages, which is the statutory maximum, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Dkt 41 at 2. The statutory maximum for a Section 553 violation is also $10,000. 47 U.S.C. § 553(c)(3)(A)(ii).

"There must be 'egregious circumstances before awarding maximum statutory damages.' " *Zuffa, LLC v. Black Diamond, Inc.*, No. 10–02844, 2011 WL 6217143, at *8 (W.D. Tenn. Dec. 14, 2011) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

*Buckeye Cablevision, Inc. v. Sledge*, No. 3:03CV7561, 2004 WL 952875, at *6 (N.D. Ohio Apr. 8, 2004)). "A traditional method of determining statutory damages [under the FCA] is to estimate either the loss incurred by the plaintiff or the profits made by the defendants." *Joe Hand Promotions, Inc. v. Ho*, No. C–09–01435, 2009 WL 3047231, at *1 (N.D. Cal. Sept. 18, 2009) (citation and quotation omitted).[2]

In similar cases, the actual loss incurred by the plaintiff is measured as the cost of the license that the defendants would have been required to pay to access the broadcast for commercial use. *See Coria*, 2015 WL 1089044, at *5 ("[T]he court finds that Plaintiff is entitled to $2,200.00 in statutory damages under Section 553(c)(3)(A)(ii), which represents Plaintiff's actual losses based on the license fee"). Thus, courts "begin by asking what the defendant would have paid had he sought to obtain a lawful license." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 279 (E.D. Pa. 2014). "If the plaintiff issued a card listing rates for its programming (e.g., segmented by the capacity of the establishment), this number can be easily determined," but "[i]n cases without a rate card, courts have attempted to approximate a sublicense fee by estimating a per-patron charge and multiplying it by the number of patrons in the defendant commercial establishment." *Id.*

Consistent with this approach, in evaluating motions for default judgment, courts have assessed evidence and allegations relating to the licensing fee, and the capacity of the establishment where the broadcast was shown, in order to determine the appropriate amount of damages. *See, e.g., Zuffa, LLC v. Perris*, No. 2:19-cv-00938, 2020 WL 502645, at *4 (W.D. Pa. Jan. 31, 2020) ("This Court, however, is persuaded by the practice followed by other courts, where the plaintiff is awarded the license fee the defendant, based on the maximum capacity, would have paid if it had legally purchased the event.") (quotation marks and citation omitted); *Zuffa v. Mosman*, No. CV 19-6184, 2020 WL 6174576, at *2 (C.D. Cal. Mar. 9, 2020) ("[I]n 2018, [Zuffa] charged $893 to establishments with a capacity of 51 to 75 people, and $998 to establishments with a capacity of 76 to 100 people. Based on the foregoing, the Court awards $1,000 in statutory damages pursuant to [the FCA]"); *Zuffa, LLC v. Black Diamond, Inc.*, No. 10–02844, 2011 WL 6217143, at *8 (W.D. Tenn. Dec. 14, 2011) ("Based on the rate card provided by Zuffa, the company would have received $1,100 if [Defendant] had purchased the Broadcast properly. [] Other factually similar decisions from within this Circuit support awarding damages based on a company's rate card.").

In addition to a plaintiff's losses, "the court might consider 'any profits of the violator that are attributable to the violation' which have not already been taken into account." *Yakubets*, 3 F. Supp. 3d at 280 (quoting § 553(c)(3)(A)(i)). "A court will necessarily have to exercise some discretion as to whether to award any further damages at all, for evidence of profits may be too speculative if the plaintiff cannot show that the profits 'are attributable to the violation.' " *Id.* (quoting § 553(c)(3)(A)(i)); *see, e.g., J & J Sports Prod., Inc. v. Mosley*, No. C–10–5126, 2011 WL 2066713, at *6 (N.D. Cal. Apr. 13, 2011) ("[T]he Court recommends an award of $2,500, the loss incurred by Plaintiff . . . plus some margin for profits earned . . . from the event."); *J & J Sports Prods., Inc. v. Duong*, No. 13–02002, 2014 WL 68904, at *4 (N.D. Cal. Jan. 8, 2014) ("As there is no evidence of how much Defendant made during the unlawful exhibition of the Program, the Court shall base statutory damages on the cost of the commercial license.").

---

[2] Although the amount of damages available for recovery differs under Sections 605 and 553 differs, the standard for evaluating damages does not differ based upon the available case law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

"[I]n the absence of evidence, an estimate of profits should be a conservative figure that does not simply allow circumvention of the actual damages provision's proof requirement." *Yakubets*, 3 F. Supp. 3d at 280. The following factors are instructive:

> (1) the size of the establishment; (2) the number of patrons at the establishment, taken, to the extent possible, as the number of patrons present because of the interception (to which evidence of advertising to attract customers may be relevant); (3) the number, size, and position of screens displaying the broadcast (a factor to be considered in conjunction with (1) and (2) as an indication of who might be there specifically to watch); (4) any cover charge levied because of the interception; (5) what additional money patrons spent because of the interception (i.e., the amounts spent by those who otherwise would not have come, plus any other premiums or greater spending by those who would have come anyway); and (6) any such other factors as may appear relevant in the case before the court.

*Id.*

There are no allegations in the Complaint, nor evidence presented in support of the Motion, as to the commercial licensing fee for the Broadcast. The only relevant factor for which an allegation has been made is the lawful occupancy capacity of Socal Tacos. Dkt. 8 ¶ 14 (Socal Tacos "had a lawful occupancy capacity of approximately 1–49 people on April 8, 2023"). This is not enough evidence to warrant an award of the statutory maximum damages requested. It is also not sufficient evidence from which an appropriate amount of damages can be ascertained.

Therefore, the issue as to the amount of damages that may be awarded is deferred until Plaintiff presents supplemental evidence as to actual losses, *e.g.*, in the form of a licensing fee, and/or as to Defendants' profits due to the alleged violation. Any such evidence shall be presented within 30 days of the issuance of this Order; provided, however, this is without prejudice to a request for additional time to present such evidence based on the results of the reasonable efforts that have been made by Plaintiff within the 30-day period. Therefore, a ruling on the request for statutory damages is **DEFERRED**.

        (3)    <u>Enhanced Damages Under Section 553</u>

Plaintiff also seeks $25,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) for the "willful violation" of Section 605. Dkt 41 at 2. The maximum for enhanced damages under Section 605 is $100,000, and the maximum for enhanced damages under Section 553 is $50,000. 47 U.S.C. § 605(3)(C)(ii); 47 U.S.C. § 553(c)(3)(B).

Section 553 provides for enhanced damages when the "violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B). Courts generally have inferred willfulness in similar motions for a default judgment because "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *J & J Sports Prods., Inc. v. Mosley*, No. C–10–5126, 2011 WL 2066713, at *7 (N.D. Cal. Apr. 13, 2011) (quoting *Time–Warner Cable of N.Y. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). Further, it can reasonably be inferred that "Defendant[s] financially benefitted from the illegal interception both by avoiding paying the licensing fee and presumably attracting additional patrons who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

spent more time in the establishment watching the Broadcast." *J & J Sports Prods., Inc. v. Sergura*, No. C 12–01702, 2014 WL 1618577, at *5 (N.D. Cal. Apr. 21, 2014).

In determining the amount of enhanced damages, courts generally apply a "simple multiplier" to the actual or statutory damages, "the value of which may be adjusted as the case demands, [to] best achieve[] the dual goals of general and specific deterrence." *Yakubets*, 3 F.Supp.3d at 290. Courts consider several factors to determine the multiplier, including "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant. Repeated violations may also justify enhanced damages." *J & J Sports Prods., Inc. v. Concepcion*, No. C 10–05092, 2011 WL 2220101, at *4 (N.D. Cal. June 7, 2011). Because enhanced damages are designed to deter piracy, the "repeated violations" factor is given particular weight. *See, e.g., Yakubets*, 3 F. Supp. 3d at 291 ("The main case—specific (and thus specific deterrence) factor—although the Court will not attempt to foreclose the consideration of other factors in an appropriate case—is whether, and to what extent, the defendant is a repeat violator.").

For the reasons previously discussed with respect to the statutory damages, insufficient evidence has been provided to determine the appropriateness of $25,000 in enhanced damages. Thus, Plaintiff is permitted to present any additional evidence with respect to the factors stated above. Therefore, a ruling on the request for enhanced damages is **DEFERRED**.

          b)      Damages Pursuant to Alleged Violation of 17 U.S.C. § 501

Plaintiff also seeks an award of $10,000 in statutory damages under 17 U.S.C. § 504(c)(1) and $30,000 in enhanced damages under 17 U.S.C. § 504(c)(2) for Defendants' alleged violation of 17 U.S.C. § 501. Dkt. 41 at 2.

Because a "default judgment must not differ in kind from . . . what is demanded in the pleadings" (Fed. R. Civ. P. 54(c)), Plaintiff may not be awarded statutory damages pursuant to 17 U.S.C. § 504(c), as such a remedy was not pled in the Complaint. Dkt. 8 at 15; Dkt. 41 at 2. In the Complaint, Plaintiff requested only "actual damages" pursuant to 17 U.S.C. § 504(b). Section 504(b) states:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

As discussed with respect to statutory damages under the FCA, Plaintiff has failed to provide evidence of "the actual damages suffered by [it]" or "any profits of [Defendants] attributable to the infringement." 17 U.S.C. § 504(b). However, as previously discussed, Plaintiff is permitted to submit such evidence in response to this Order.

It is noteworthy that courts have consistently held that awarding damages pursuant to 17 U.S.C. § 504 in addition to statutory and enhanced damages under the FCA is "duplicative and excessive." *Zuffa v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
| Title | Zuffa, LLC v. Claudette Franco et al | | |

*Mosman*, No. CV 19-6184, 2020 WL 6174576, at *2 (C.D. Cal. Mar. 9, 2020). Instead, they have imposed an additional award of $750, the statutory minimum under 17 U.S.C. § 504(c), "because 17 U.S.C. § 504 does vindicate separate rights than those rights under [the FCA]." *Id.*; *see also Perris*, 2020 WL 502645, at *5 (awarding $750 pursuant to 17 U.S.C. § 504 because the award under the FCA "sufficiently compensates [Plaintiff] for the statutory violations committed by the Defendants and deters future violations."); *Joe Hand Promotions, Inc. v. Garcia-Nunez*, No. 6:18-cv-01452, 2019 WL 2437456, at *3 (D. Or. June 11, 2019) (declining to award damages under 17 U.S.C. § 504 because "[i]t would be duplicative and excessive to award Plaintiff damages under § 504 in addition to statutory and enhanced statutory damages under [the FCA] for the same underlying conduct.").

For the reasons previously discussed with respect to the damages under the FCA, a ruling on the request for actual damages is **DEFERRED** until further evidence, if any, is presented.

        c)        Attorney's Fees and Costs

Plaintiff seeks an award of $980 in attorney's fees. Dkt. 41-5 ¶¶ 18–19. The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party," which can include "a reasonable attorney's fee." 17 U.S.C. § 505. Section 553 includes a similar provision, allowing the court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails". 47 U.S.C. § 553(c)(2)(C).

A reasonable fee may be determined by reference to the "lodestar figure," or the "number of hours reasonably expended on the litigation . . . multipl[ied] by a reasonable hourly rate." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). In determining the reasonableness of the lodestar figure, a court considers the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

Upon entry of default judgment, Local Rule 55-3 provides a schedule for attorney's fees that correspond to the amount of judgment awarded, exclusive of costs. L.R. 55-3. Because the amount of damages has not yet been determined, an evaluation of attorney's fees is premature.

Plaintiff also seeks $1,750 in costs: Plaintiff has requested reimbursement for the following: a $405 filing fee, $595 for a service of process fee and $750 for an auditing fee. Dkt. 41-5 ¶¶ 18. Upon the entry of judgment, a request for an award of costs shall be presented to the Court Clerk, pursuant to L.R. 54-2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-00025 JAK (SHKx) | Date | December 4, 2024 |
|---|---|---|---|
| Title | Zuffa, LLC v. Claudette Franco et al | | |

### IV. Conclusion

For the reasons stated in this Order, the Motion is **GRANTED** as to Defendants' liability for the causes of action presented, and **DEFFERED** with respect to the award of damages and attorney's fees. Any further evidence shall be presented within 30 days of the issuance of this Order; provided, however, this is without prejudice to a request for additional time to gather and present such evidence based on the results of the reasonable efforts that have been made by Plaintiff within the 30-day period.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | DT |